**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

_____

No. 92-3396

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

EDWARD ROBICHAUX,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
_____
(July 1, 1993)

Before WISDOM, DAVIS, and SMITH, Circuit Judges.

WISDOM, Circuit Judge.

This criminal case involves mail and wire fraud which led to the failure of an insurance company.  We AFFIRM the conviction on all three counts and also AFFIRM the sentence.


I.


Edward Robichaux was the CEO of North American Financial

Corporation (NAFC). Edward Street was the CEO of Windmier Financial Services (Windmier). In April 1989, Robichaux and Street formed a joint venture, N.W. Venture.

To fund this venture, Street contributed approximately $13 million in Federal National Mortgage Company securities (FNMAs or "Fannie-Maes"). These securities did not belong to Street but were held in trust by several banks. Street learned the identification numbers of these securities and through this information was able to act as if he had control over these securities. Street's financial manipulations led to his conviction for bank fraud and wire fraud. Robichaux did not pay anything for these securities.

In June 1989, Robichaux attempted to secure a $2.2 million dollar loan from the People's Bank in Biloxi. He proposed to use one of the FNMA's as collateral. On June 8, 1989, Robichaux faxed a letter of guarantee to the People's Bank reflecting that he did own the securities. This conduct forms the substance of count three. The loan was not completed because Robichaux could not produce the securities.

Shortly thereafter, Robichaux entered into an agreement with Gordon L. Rush, who owned Presidential Fire and Casualty Company (Presidential). Robichaux assigned the Fannie-Maes to G.L.R., Inc., (GLR) in exchange for various GLR assets, including GLR stock. GLR then assigned these FNMAs to Presidential as a capital contribution. Without incurring any corresponding debt, Presidential placed the FNMAs on its books. The effect of this assignment was to make Presidential appear to be solvent.

2

Presidential continued to issue insurance policies (and collect premiums) for without this $13 million, Presidential would have been undercapitalized and thus barred from any further insurance business.

At this time, Rush wrote personal checks to Robichaux for commissions totaling $86,000, which was funded by Presidential.

On October 2, 1989, Robichaux faxed to the Texas State Board of Insurance (Texas) a letter verifying that approximately $12.78 million in Fannie-Maes was held by NAFC on behalf of GLR, free and clear of any encumbrance. Count two of the indictment is based on this misrepresentation.

In December 1989, the Louisiana Insurance Commission (Commission) retained Deloitte & Touche (Touche) to audit Presidential. Touche asked Robichaux to verify Presidential's ownership of the FNMAs. Robichaux verified that the FNMAs were held by him for GLR by letter on December 18, 1989. Count one of the indictment is based on this verification. Touche relied on Robichaux's verification and issued a favorable audit. On November 12, 1991, Presidential was declared insolvent.

Gordon Rush and Edward Street have been convicted of charges related to Robichaux's. Rush is awaiting sentencing, and Street's appeal is pending before this Court.

Robichaux was indicted on September 13, 1991 for mail fraud (count one) and two counts of wire fraud (counts two and three). After a four day trial, a jury found Robichaux guilty on all counts. The district court sentenced Robichaux to fifty-seven

months in jail.

                                II.

Robichaux raises numerous points of error.  We have arranged
them in seven categories:

A. 404(b) Evidence.

B. Failure to Disclose Grand Jury Transcript.

C. Surplusage in the Indictment.

D. The Non-Severance of the Indictment.

E. Sufficiency of the Evidence.

F. Prosecutorial Misconduct.

G. Sentencing.


A. 404(b) Evidence.

In the fall of 1987, Robichaux admitted to an undercover FBI
agent that he knew that certain bonds he intended to use to
increase the assets of another insurance company which was owned by
Rush were fraudulent.  Robichaux subsequently inflated the assets
of this insurance company with these bonds.  On September 14, 1988,
he pleaded guilty to this crime.

The district court permitted the FBI agent to testify at this
trial about Robichaux's earlier conduct.  Federal Rule of Evidence
404(b) allows the introduction of other crimes as proof of
knowledge and intent.[1]  The district court must also undertake a

_____

     [1]  FRE 404(b) provides:
          Other crimes, wrongs, or acts.  Evidence of other
crimes, wrongs, or acts is not admissible to prove the character
of a person in order to show action in conformity therewith.  It
may, however, be admissible for other purposes, such as proof of

                                 4

403 probity--prejudice balancing.[2]  The district court's determinations on these matters "will not be disturbed absent a clear showing of abuse of discretion".[3]

The government was required to prove that Robichaux had the specific intent to commit fraud.  Robichaux asserted at trial that he lacked this intent, and in his brief to this Court contended that he did not know "what was going on".  Because intent is subjective, it is often difficult to prove.  This was the rationale behind allowing evidence of other crimes to show intent under 404(b).

Robichaux was on trial for enhancing with fraudulent securities the assets of an insurance company owned by Rush.  That just a few years ago, Robichaux had knowingly used fraudulent securities to increase the assets of another insurance company owned by Rush made it substantially less likely he did not know "what was going on" and had acted without intent to commit fraud in this case.

---

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[2]  FRE 403 provides:
    Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time  Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
See U.S. v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc) cert. denied, 440 U.S. 920 (1979) for a discussion of this two-step approach to admission of extrinsic evidence.

[3]  U.S. v. Emery, 682 F.2d 493, 497 (5th Cir. 1982) cert. denied 459 U.S. 1044 (1982).

The probative value of this evidence is strong. The district court must also consider the prejudicial effect and whether the probative value is substantially outweighed by the attendant prejudice. Because the offenses are so similar the potential prejudice is great, for there is the risk that the jury may become confused or convict the defendant under a propensity theory. The prejudice, however, results from the great probative value. Indeed, the earlier evidence is so similar that it almost amounts to a signature. The district court acted properly in admitting this evidence and wisely instructed the jury as to the limited purpose of this extrinsic evidence.

B. Failure to Disclose Grand Jury Transcript.

The government did not turn over to Robichaux the grand jury transcript of Jennifer Matte, an attorney for Presidential, who testified at Robichaux's trial. This failure to disclose, Robichaux argues, requires a new trial.

The grand jury testimony consisted only of Matte stating her name, occupation, and that she was counsel for Presidential. She thereupon invoked the Fifth Amendment and gave no further testimony. At trial, Matte was more loquacious (her testimony occupies forty-five pages of volume 11 of the transcript), and her testimony was harmful to Robichaux. Robichaux suggests that if he had known about this prior testimony, he would have cross-examined her about it and sought to impeach her.

Robichaux's argument fails. The law is clear that cross-examining a witness about an invocation of the Fifth Amendment at

6

a grand jury proceeding is not permitted.[4]  This Court has held that, "The only . . . purpose for which defense counsel might have sought to introduce [the witness's] past silence [before a grand jury] would have been to infer that the witness had something to hide.  Because a plea of privilege in such circumstances is not probative of guilt, the court properly excluded the evidence . . . A claim of privilege is wholly consistent with innocence."[5]

Because the law is clear that Matte could not be questioned about her earlier testimony, we need not reach the question of whether this evidence is material under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>U.S. v. Bagley</u>, 473 U.S. 667 (1985) or falls under the Jencks Act.

C. <u>Surplusage in the Indictment</u>.

Robichaux sought to have parts of the indictment struck.  We review for abuse of discretion.

Robichaux's argument is meritless.  The cast of characters including Rush in paragraph A of the indictment is accurate, helpful, and relevant.  The listing of the victims including the citizens of Louisiana and Texas in paragraph B appears to be an accurate listing of those who suffered because of Robichaux's alleged fraud.  Finally, as this Court has stated, the use of the phrase "`scheme and artifice to defraud' [in paragraph B] does not make the indictment defective . . . [it was] meant only to

---

[4]  <u>U.S. v. Johnson</u>, 585 F.2d 119, 126-27 (5th Cir. 1978).

[5]  <u>Id</u>.

elaborate the nature of [the defendant's] fraudulent activity".[6]
The district court did not abuse its discretion in refusing to
strike portions of the indictment.

D. The Non-Severance of the Indictment.

Robichaux claims that counts one and two were improperly
joined with count three.

We must consider whether either a misjoinder or a prejudicial
joinder has occurred.

This Court has held that misjoinder "is a matter of law which
is completely reviewable on appeal, but rule 8 [of the Federal
Rules of Criminal Procedure][7] is to be broadly construed in favor
of initial joinder".[8] Rule 8's transaction requirement is flexible
and "may comprehend a series of many occurrences, depending not so
much upon the immediateness of their connection as upon their
logical relationship".[9]

Prejudicial joinder is committed to the discretion of the
trial court, and reversal is warranted only if the defendant can

---

[6] U.S. v. Lennon, 814 F.2d 185, 190 (5th Cir. 1987), cert.
denied, 484 U.S. 928 (1987).

[7] Rule 8(a) provides:
    Joinder of Offenses. Two or more offenses may be
charged in the same indictment or information in a separate count
for each offense if the offenses charged, whether felonies or
misdemeanors or both, are of the same or similar character or are
based on the same act or transaction or on two or more acts or
transactions connected together or constituting parts of a common
scheme or plan.

[8] U.S. v. Fortenberry, 914 F.2d 671, 675 (5th Cir. 1990)
cert. denied 111 S.Ct. 1333 (1991).

[9] Id.

show clear prejudice from the trial court's refusal to sever.[10]

Some of the same securities used in the transaction that forms the basis of count three were used in the transaction that was the basis for counts one and two. Both transactions occurred within a few months of each other. They require similar background explanations. Although different victims were involved, they are logically related. Moreover, Robichaux has not demonstrated any prejudice which resulted from this joinder. Therefore, we hold that the district court neither erred nor abused its discretion in refusing to sever the indictment.

E. Sufficiency of the Evidence.

This Court reviews a contention that the evidence was insufficient "in the light most favorable to the verdict" and inquires "whether a reasonable juror could find the evidence establishes guilt beyond a reasonable doubt".[11]

Robichaux argues that the government failed to prove intent to commit fraud. This Court has pointed out that in a mail fraud case proof of intent "may arise by inference from all of the facts and circumstances surrounding a transaction".[12] In a wire fraud case we stated, "Intent to defraud another for [one's] personal gain constitutes the specific intent to defraud as required by the wire

---

[10] Id.

[11] U.S. v. Salazar, 958 F.2d 1285, 190-91 (5th Cir. 1992) cert. denied 113 S.Ct. 185 (1992).

[12] U.S. v. Aubrey, 878 F.2d 825, 827 (5th Cir. 1989) cert. denied 493 U.S. 922 (1989).

9

fraud statute."[13]

Rush paid Robichaux $86,000 in commission payments. Robichaux told Texas and Touche that he held the Fannie-Maes for Presidential/GLR. There was a side agreement between Robichaux and Rush that the Fannie-Maes would revert to Robichaux and NAFC if Presidential became insolvent. This side agreement was not filed with the Jefferson Parish Clerk of Court or shown to Touche, Texas, or Commission while the agreement purporting to transfer the Fannie-Maes to Presidential was filed. The 404(b) evidence is also indicative of intent. This Court "will not lightly overturn a determination by the trier of fact that the accused possessed the requisite intent [to commit fraud],"[14] and there is more than sufficient evidence here to affirm a verdict that Robichaux knew "what was going on" and had the intent to commit fraud.

F. Prosecutorial Misconduct.

Robichaux contends that the prosecutor made improper statements in both her opening and closing arguments.[15] The alleged

_____

[13] U.S. v. St. Gelais, 952 F.2d 90, 96 (5th Cir. 1992) cert. denied 113 S.Ct. 439 (1992).

[14] Aubrey at 827.

[15] In her opening argument, the prosecutor stated, "...And you will hear how much the loss was to the State of Louisiana. And, as you know, the State of Louisiana is the taxpayers and the taxpayers are the citizens. And not only is there a loss of the taxpayers and citizens but all those people that went in to get insurance and said I need to insure my car so if its stolen or someone rear ends me or, you know, if I get in an accident of any kind I can make sure if I am hurt or my child is hurt they can go to the hospital and the bill is covered. Well, guess what, it was not covered...."
      In her closing argument, the prosecutor stated: "This is of monumental importance to the defendant you're told. Well,

10

impropriety is that the prosecutor suggested that Louisiana citizens and all those who seek to purchase insurance suffer from Robichaux's fraud. This, Robichaux argues, placed the jurors in the position of victims and thereby prejudiced him.

The appellant objected only to the closing statement. The opening remark, therefore, is reviewed under a plain error standard.[16] If this Court finds the closing remark to be misconduct, we must determine whether it casts serious doubt upon the correctness of the jury's verdict.[17]

Neither statement was unduly prejudicial. The government was attempting to explain a rather complicated financial transaction and tried to make it easier for the jury to understand the effect of the fraud. In essence, the government said that this crime affects us all. Counsel is allowed "wide latitude in closing arguments".[18] A prosecutor is allowed to "impress upon the jury the seriousness of the charges".[19] The comments about which Robichaux complains were within the bounds of reasonableness in impressing upon the jury the seriousness of the charges.

---

I will tell you what, this case is of monumental importance to every person who ever bought a policy, every person that ever paid to have their car insured from Presidential Fire & Casualty."

[16] <u>U.S. v. Carter</u>, 953 F.2d 1449, 1461 (5th Cir. 1992) <u>cert. denied</u> 112 S.Ct. 2980 (1992).

[17] <u>Carter</u> at 1457.

[18] <u>U.S. v. Lowenberg</u>, 853 F.2d 295, 304 (5th Cir. 1988) <u>cert. denied</u> 489 U.S. 1032 (1989).

[19] <u>Id</u>.

11

G. Sentencing.

Robichaux has two complaints about the sentencing:  the district court incorrectly determined the amount of loss which stemmed from his fraudulent behavior, and the district court did not reduce his sentence for acceptance of responsibility.

1. Amount of Loss.

Robichaux argues that the only loss which can be clearly established from his actions is the $86,000 payment.  The district court held that a $5-10 million loss can reasonably be calculated from the facts.  "Factual findings regarding sentencing factors . . . are entitled to considerable deference and will be reversed only if they are clearly erroneous.  A factual finding is not clearly erroneous as long as it is plausible in light of the record read as a whole."[20]

We must determine, therefore, whether it was clearly erroneous to find that the losses attributable to Presidential's failure resulted from Robichaux's actions in placing fraudulent securities on Presidential's books.  It is not clearly erroneous to assume that if Touche had not issued a favorable audit for Presidential, which only occurred because of Presidential's fraudulently inflated balance sheet, the Commission would have acted to liquidate the firm at an earlier date and minimized the losses.  As of the date of the presentence report, the cost to the state of Louisiana that resulted from the failure of Presidential was estimated at $10

---

[20]  U.S. v. Sanders, 942 F.2d 894, 897 (5th Cir. 1991).

12

million.[21]  The commentary to the fraud guidelines states, "The loss need not be determined with precision.  The court need only make a reasonable estimate of the loss, given the available information."[22]  The district court's decision to value the loss resulting from Robichaux's fraud at between $5 and $10 million dollars is a reasonable estimate and is not clearly erroneous.

   2. <u>Acceptance of Responsibility</u>.

This Court's review of the district court's decision not to reduce the guideline level by two points for acceptance of responsibility is "entitled to great deference"[23].  The extent of Robichaux's acceptance of responsibility appears in a short note to the probation officer in which he wrote, "I made a mistake for which I am very sorry."  He presents no additional support for his argument.  Robichaux's continuing assertion of lack of intent suggests that he has not fully accepted responsibility for his actions.  The district court acted properly in refusing to award two points for acceptance of responsibility.[24]

III.

---

[21]  Dale Reed, an insurance liquidator hired by the Louisiana Insurance Guarantee Association (LIGA) told the probation officer that "the State of Louisiana has already suffered an approximate loss of at least $10,000,000.  This figure is, however, expected to grow." (Presentence Report pp.6-7).

[22]  U.S.S.G. § 2F1.1 comment 8.

[23]  <u>U.S. v. Edwards</u>, 911 F.2d 1031, 1034 (5th Cir. 1990) quoting U.S.S.G. § 3E1.1 comment 5.

[24]  The Court would like to commend the government for an excellent brief.  It states the facts and law clearly in simple declarative sentences.

We AFFIRM the judgment of the district court.