**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 92-2809**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JOSEPH JEROME WILLIS,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**

_____
**(October 20, 1993)**

Before KING and BARKSDALE, Circuit Judges, and PARKER,[1] District Judge.

BARKSDALE, Circuit Judge:

The primary issue before us is the use of prior convictions, pursuant to Fed. R. Evid. 404(b), as part of the proof for the charged offense. Joseph Jerome Willis appeals his drug-trafficking and weapons convictions, contending, _inter alia_, that his two prior drug convictions were inadmissible, under the rule, to show that he intended to exercise dominion and control over the cocaine base found in the possession of his companion. We **AFFIRM**.

_____

[1] Chief Judge of the Eastern District of Texas, sitting by designation.

I.

On the afternoon of March 9, 1992, before executing an unrelated arrest warrant, officers conducted surveillance of Willis. They observed him get into a car with a woman (later identified as America Mercedes Falcon) and a small child. Willis drove in an evasive manner, causing the officers to believe that he was attempting to evade surveillance. They followed the vehicle (driven by Willis) to an apartment complex, where Willis, Falcon, and the child exited the car and entered an apartment. Willis and Falcon returned to the car about 15 minutes later. Officers then followed it to a condominium. Willis and Falcon both got out of the car, but Willis remained near it and appeared to be standing lookout while Falcon entered a condominium; she returned about 15 minutes later. Willis and Falcon then drove to a house that was for sale or lease. Willis was arrested while he and Falcon were standing on its porch.

One of the officers noticed a .25 caliber semi-automatic pistol in plain view in the open ashtray of the car in which Willis and Falcon had been riding. The ashtray was closer to the driver's side of the car than to the passenger's, and the pistol was within easy reach of a person sitting in the driver's seat. The pistol was unloaded, and the officers found no ammunition clip or bullets in the car. Also in the car ashtray were small pieces of pink or coral-colored cardboard with the letters "L.A." (an alias used by Willis) and a telephone number written on them. A cellular telephone and two digital pagers were found during a search of the

car.  Small manila envelopes containing marijuana, and plastic baggies containing cocaine and cocaine base ("crack" cocaine), were found in Falcon's purse; and another baggie containing 12.4 grams of crack cocaine was found in her pants.  Willis was taken to the police station, advised of his rights, and interviewed.  During the interview, he admitted that the drugs carried by Falcon belonged to him, but denied owning the pistol.

Willis was charged and convicted (by a jury) for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (count one); possession with the intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (count two); and using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (count three).  He was sentenced, *inter alia*, to 120 months on count one and 150 months on count two, to run concurrently, and to a consecutive 60-month term on count three.

## II.

Willis raises four issues:  admissibility of his prior drug convictions pursuant to Rule 404(b); denial of his motion for a mistrial based on an unresponsive answer; prosecutorial misconduct during closing argument; and sufficiency of the evidence on count three (using or carrying a firearm during and in relation to a drug trafficking crime).

A.

Notwithstanding admitting in his post-arrest interview that the drugs found on Falcon were his, Willis reversed course before trial, placing possession in issue for count two -- possession with intent to distribute. He contends that, in light of his offer to stipulate to intent to distribute, his two prior drug convictions were not admissible under Rule 404(b),[2] asserting that their probative value on, *inter alia*, his intent to exercise dominion and control over (constructively possess) the drugs was outweighed by unfair prejudice.

> This court has set forth a two-part test for determining the propriety of admitting evidence of "bad acts" not alleged in the indictment. First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403.[3]

---

[2] Fed. R. Evid. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

[3] Fed. R. Evid. 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by

*United States v. Dula*, 989 F.2d 772, 777 (5th Cir. 1993) (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (*en banc*), *cert. denied*, 440 U.S. 920 (1979)).  "The district court's determinations on these matters will not be disturbed absent a clear showing of abuse of discretion".  *United States v. Robichaux*, 995 F.2d 565, 568 (5th Cir. 1993) (internal quotation marks omitted); *see also United States v. Dula*, 989 F.2d at 778 ("The balancing of probative value against prejudicial effect is committed to the sound discretion of the trial judge, a decision that is final in the absence of abuse of discretion").

Willis stipulated that he was a convicted felon.  Prior to trial, the Government gave notice that, pursuant to Rule 404(b), it intended to offer into evidence his state convictions in 1991 (the offense in issue was in March 1992) for possession of cocaine and possession with the intent to distribute cocaine.  Willis moved to exclude the convictions, offering to stipulate to intent to distribute if the Government proved possession.  Before trial, the district court conducted a hearing regarding the admissibility of the prior convictions.  The Government urged that they were relevant not only as to Willis' intent to distribute, but also, noted *supra*, as to his knowledge and intent to constructively possess the cocaine base found on Falcon.  The district court denied Willis' motion, holding that the prior convictions were

the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considera-tions of undue delay, waste of time, or needless presentation of cumulative evidence.

probative on the issue of his intent to possess and that the probative value was not substantially outweighed by any unfair prejudice. Shortly after trial, the district court, in a very thorough opinion, further explained her ruling.

The two prior convictions were admitted into evidence pursuant to a written stipulation. Immediately after the stipulation was read to the jury, the district court gave a very comprehensive limiting instruction;[4] and the charge included a similar

---

[4] That instruction provided:

> Ladies and gentlemen, the evidence you have just heard has been admitted by me for a limited purpose only and you must take that evidence with the limited purpose I am about to tell you about.

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. In other words, it is not admitted to show somebody is a bad person and therefore, has committed a crime. It is ... admitted for the limited purpose of assisting you in determining the intent with which a defendant may have acted. In this regard, you are instructed that evidence of an alleged similar transaction may not be considered by the jury in determining whether an accused committed the acts or participated in the activity alleged in the indictment. Nor may evidence of such an alleged similar transaction of a like nature be considered for any other purpose whatever unless the jury first finds that the other evidence in the case standing alone establishes beyond a reasonable doubt that the accused participated in the activity alleged in the indictment. If the jury should find beyond a reasonable doubt from other evidence in the case that the accused participated in the activity alleged in the indictment, then the jury may consider evidence as to transactions of a like nature in determining the state of mind or intent with which the accused did the act charged in the indictment and for only that purpose.

- 6 -

instruction.[5]  Willis does not challenge the form of either.  And, before the jury retired to deliberate, the court, at Willis' request, again instructed the jury that the evidence of similar acts could be considered only for the purpose of determining whether the defendant had the state of mind or intent necessary to commit the crime charged in count two (possession with intent to distribute).

In support of his contention that the prior convictions should not have been admitted, Willis relies primarily, if not totally, on *United States v. Yeagin*, 927 F.2d 798 (5th Cir. 1991).  Yeagin was

---

[5]     The charge stated in pertinent part:

> During this trial, you have heard evidence of acts of the defendant which may be similar to those charged in the indictment, but which were committed on other occasions.  You must not consider any of this evidence in deciding if the defendant committed the acts charged in the indictment.  However, you may consider this evidence for another, very limited, purpose.
>
> Evidence of some other act of a like nature may not be considered for any other purpose whatsoever unless you first find that the other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused did the particular act charged in the particular count of the indictment then under deliberation.
>
> If you find beyond a reasonable doubt from other evidence in the case that the accused did the act charged in the particular count under deliberation, then you may consider evidence of the similar acts committed on other occasions to determine whether the defendant had the state of mind or intent necessary to commit the crime charged in count two of the indictment.
>
> This is the limited purpose for which evidence of other similar acts may be considered.

convicted for violations almost identical to those charged against Willis:  possession with the intent to distribute methamphetamine, use of a firearm in connection with a drug-trafficking offense, and possession of a firearm as a convicted felon.  *Id*. at 799.  And, as here, in an effort to prevent the Government from introducing evidence of his nine prior felony convictions, Yeagin offered to stipulate that he had the requisite intent to distribute if the Government proved that he possessed methamphetamine, and that he had prior felony convictions if the government proved that he possessed a firearm.  *Id*. at 800.  The Government refused to accept the stipulations, and a list of all nine of the convictions was read to the jury.  *Id*. at 800.

On Yeagin's appeal, the Government conceded that the district court erred in admitting four of the nine convictions, because they were non-drug-related and, therefore, irrelevant.  *Id*. at 801. "[T]o provide guidance to the district court in retrying the case," our court considered the admissibility of Yeagin's other five prior convictions, and concluded that, in light of Yeagin's offer to stipulate to intent to distribute if the Government proved possession, the prior convictions were not relevant to that element.  *Id*. at 801-02.

The Government waited until the appeal in *Yeagin* to assert that Yeagin's prior drug-related convictions were admissible because they were relevant to the issue of knowledge or intent required for constructive possession.  *Id*.  Our court responded:

> We agree that constructive possession includes
> some element of knowledge or intent.  We also agree

- 8 -

that Yeagin's past drug-related crimes might have been relevant on the issue of whether Yeagin intended at the time of his arrest to exercise dominion or control over the drugs.... This evidence, however, was highly prejudicial to Yeagin. It provided direct support only for the one inference specifically forbidden by rule 404(b): that because Yeagin had committed drug crimes in the past, he had a bad character and a propensity to commit such crimes again.

Other crimes evidence is not admissible merely because the government manages on appeal to identify some broad notion of intent lurking behind the element of possession. A trial judge faced with the problem of admissibility of other crimes evidence should exercise caution and should require the government to explain why the evidence is relevant and necessary on a specific element that the government must prove. Otherwise, the accused might be convicted because of his participation in other crimes rather than because he is guilty beyond a reasonable doubt of the crime alleged.

*Id*. at 803 (citations and internal quotation marks omitted). Our court held in *Yeagin* that the "need to introduce evidence of [the] nine prior convictions was negligible in comparison to the extremely prejudicial effect that this evidence must have had on the jury." *Id.* Such is not the case here. The result in *Yeagin* is controlled by two factors not present in the case before us. First, four of Yeagin's nine prior convictions were not drug-related. That fact alone might have been sufficient to warrant reversal. *Id*. at 801. Second, although Yeagin's prior convictions were offered at trial to prove that he intended to distribute the cocaine, the Government waited until the appeal to assert that the convictions were admissible to prove that he intended to constructively possess the cocaine.

As discussed, although Willis admitted ownership of the drugs in a post-arrest interview, his defense at trial was that he did not possess them. And, because the drugs were found on Falcon, Willis' constructive possession was a critical issue. As noted in **Yeagin**, knowledge and intent are elements of constructive possession, **id.** at 803: *i.e.*, the Government was required to prove that Willis knew that Falcon possessed the drugs and that he intended to exercise dominion and control over them.[6] "Because intent is subjective, it is often difficult to prove. This was the rationale behind allowing evidence of other crimes to show intent under 404(b)". **Robichaux**, 995 F.2d at 568. Therefore, Willis' convictions in 1991 for *possession* of cocaine and *possession* with the intent to distribute cocaine were highly probative on that issue and thus clearly relevant. *See **United States v. Osum***, 943 F.2d 1394, 1404 (5th Cir. 1991) (quoting **Beechum**, 582 F.2d at 911) ("where the issue addressed is the defendant's intent, extrinsic offenses that are similar in nature are admissible because `the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of

---

[6]     With respect to constructive possession, the jury was instructed as follows:

> A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

The jury was instructed that the term "`knowingly' ... means that the act was done voluntarily and intentionally and not because of mistake or accident or any other innocent reason".

- 10 -

both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.'").

An even more important distinction between this case and *Yeagin* is that Willis' prior convictions were expressly offered, admitted, and presented to the jury for the purpose of showing his intent to constructively possess the cocaine base. Unlike *Yeagin*, the Government did not wait until appeal to urge that basis for admissibility.

The district court applied *Yeagin* and, as mandated by it, required the Government to explain why Willis' prior convictions were relevant and necessary, and then carefully conducted the required balancing, concluding at the hearing and in its post-trial opinion, that the jury's knowledge that Willis was a convicted felon, pursuant to the stipulation on count one (possession of firearm by convicted felon), mitigated the prejudicial effect of learning the nature of his prior convictions. The danger of unfair prejudice to Willis was minimized by the district court's careful instructions to the jury, which made it clear that the prior convictions could not be considered unless and until the jury first found that Willis had participated in the charged acts, and, even then, could be considered only for the purpose of determining whether Willis had the state of mind or intent necessary to commit the crime of possession with the intent to distribute cocaine base. *See United States v. White*, 972 F.2d 590, 599 (5th Cir. 1992)

("danger of prejudice to the defendant is minimal so long as it is clear to the jury that the extrinsic evidence is being introduced for the sole purpose of showing intent"), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1651 (1993); **United States v. Elwood**, 999 F.2d 814 (5th Cir. 1993).  The district court did not abuse its discretion.

B.

Willis contends that the district court erred by denying his motion for a mistrial, based on the following exchange between the prosecutor and a Government witness (a police officer) during direct examination (concerning the pistol found in the car in which Willis had been riding):

> Q    Did you remove this pistol?
>
> A    Yes, I did.
>
> Q    Tell the jury how you did that.
>
> A    I opened the door and reached in and took custody of the pistol.  Again, that is for our safety.  I didn't know if there was other weapons or not in this vehicle.  I had prior knowledge that there would be weapons, either on the person or in the vehicle.

The court sustained Willis' objection that the last part of the answer was unresponsive, and, at his request, struck that part and instructed the jury to disregard it.  But, it overruled Willis' motion for mistrial.

Willis maintains that the unresponsive answer was grounded in inadmissible hearsay and was so prejudicial that a mistrial should have been granted.[7]  "The grant or denial of a mistrial is, of

_____

[7]    Willis also contends, for the first time on appeal, that the unresponsive answer violated the spirit and intent of an in limine

- 12 -

course, a matter left to the discretion of the district court.  We review only for abuse of that discretion".  ***United States v. Coveney***, 995 F.2d 578, 584 (5th Cir. 1993).  Moreover, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded".  Fed. R. Crim. P. 52(a).

Based on our review of the transcript, we are convinced that the statement in issue did not have a substantial impact on the jury's verdict.  Among other things, when the statement was made, the jury already knew that Willis was a convicted felon and that, when the pistol was found, the police were there to serve Willis with an arrest warrant.  Moreover, any potential prejudice was cured by the district court's striking the testimony and instructing the jury to disregard it.  *See **Zafiro v. United States***, ___ U.S. ___, 113 S. Ct. 933, 939 (1993) ("juries are presumed to follow their instructions").

---

ruling.  Prior to trial, the district court granted Willis' request to prohibit the Government from mentioning either the nature of the arrest warrant the police were attempting to execute (assault with a deadly weapon and possession of a firearm) or that, at the time of his arrest, Willis was wanted for questioning in a homicide investigation.  Because Willis did not urge this ground in the district court as a basis for a mistrial, we review it only for plain error.  *See **United States v. Greenwood***, 974 F.2d 1449, 1462 (5th Cir. 1992), *cert. denied sub nom.*, ***Crain v. United States***, ___ U.S. ___, 113 S. Ct. 2354 (1993).  "In order to constitute plain error, the error must have been so fundamental as to have resulted in a miscarriage of justice".  ***United States v. Garcia***, 995 F.2d 556, 561 (5th Cir. 1993).  The witness' statement did not reveal any information concerning the nature of the arrest warrant or that Willis was wanted for questioning in an unrelated homicide investigation.  Therefore, to say the least, it is most questionable whether the in limine prohibition was breached.  In short, there was no plain error.

C.

Next, Willis asserts that the prosecutor deprived him of a fair trial by referring to him during closing argument as a "man that is not employed".[8] He asserts that this was an inflammatory inference, based on evidence outside the record, that he sold drugs for a living; was in blatant disregard of the court's instruction; and deprived him of a fair trial.

"Counsel is accorded wide latitude during closing argument, and this court gives deference to a district court's determination regarding whether those arguments are prejudicial and/or inflammatory". *United States v. Murphy*, 996 F.2d 94, 97 (5th Cir. 1993). "Our task in reviewing a claim of prosecutorial misconduct is to decide whether the misconduct casts serious doubt upon the correctness of the jury's verdict." *United States v. Kelley*, 981 F.2d 1464, 1473 (5th Cir.) (internal quotation marks and citation omitted), *cert. denied*, ___ U.S. ___, 113 S. Ct. 2427 (1993). "In making that determination, we consider: (1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of the appellant['s] guilt." *Id.* (internal quotation marks and citation omitted). "[T]he comments complained of must be viewed within the context of the trial in which they are made". *United States v. Dula*, 989 F.2d at 776.

---

[8]   Willis objected, and the court instructed the jury that it had the sole duty to recall the evidence.  Willis did not move for a mistrial.

The claimed improper reference is asserted by Willis to have its genesis in the recross examination of one of the arresting officers. Earlier on redirect, when the prosecutor asked the officer if he had questioned Willis about his employment, he responded: "I knew that he was unemployed". Willis' counsel did not object or seek voir dire to determine the basis of the witness' knowledge. On recross, however, Willis' counsel questioned the officer about that basis:

> Q   [W]hen you told this jury that -- you didn't ask my client whether he did any work, you just assumed that he was unemployed?
>
> A   No, sir, I had done a background check and I had that information to follow.

Willis' counsel objected that the officer's knowledge was based on hearsay, and asked the court to instruct the jury to disregard any opinion of the witness about Willis being unemployed. The court rejected the Government's assertion that the objection was untimely, and instructed the jury to disregard any testimony by the witness concerning Willis' employment. On second redirect, the prosecutor again asked the witness about Willis' employment:

> Q   Did you find anything on him indicating any sort of employment?
>
> A   No, sir.
>
> Q   For any company or anything like that?
>
> A   No, sir.
>
> Q   During your interview with him, did he mention anything about being employed?
>
> A   No, sir.

- 15 -

This testimony was not objected to. Accordingly, even assuming that the prosecutor's reference during closing to Willis' unemployment was not fully supported by the evidence, it does not come close to casting doubt, much less "serious doubt[,] upon [either] the correctness of the jury's verdict" or the fairness of Willis' trial.

D.

Finally, Willis contends that the evidence is insufficient to sustain his conviction for using or carrying a firearm during and in relation to a drug trafficking crime (count three). "In reviewing a verdict challenged on the sufficiency of the evidence, this Court views the evidence, whether direct or circumstantial, and all reasonable inferences drawn from the evidence, in the light most favorable to the jury's verdict ... [to] determine whether `a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt'". *United States v. Madison*, 990 F.2d 178, 181 (5th Cir. 1993) (quoting *United States v. Carter*, 953 F.2d 1449, 1454 (5th Cir.), *cert. denied*, ___ U.S. ___, 112 S. Ct. 2980 (1992)).

For count three, the Government was required to prove beyond a reasonable doubt (1) that Willis committed the drug-trafficking crime of possession with the intent to distribute more than five grams of cocaine base, and (2) that he knowingly used or carried the .25 caliber semi-automatic weapon, (3) during and in relation to that crime. *United States v. Blankenship*, 923 F.2d 1110, 1114

(5th Cir.), *cert. denied*, ___ U.S. ___, 111 S. Ct. 2262 (1991). "Conviction under [18 U.S.C. § 924(c)(1)] does not depend on proof that the defendant had actual possession of the weapon or used it in any affirmative manner[,] [but only that] the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking". **United States v. Mora**, 994 F.2d 1129, 1140-41 (5th Cir. 1993) (internal quotation marks and citation omitted).

Although, as discussed *supra*, Willis challenges unsuccessfully the use of extraneous offenses to support his conviction for possession with the intent to distribute (count two), he does not otherwise challenge the sufficiency of the evidence as to that count. Accordingly, for purposes of the first element of count three, the evidence is sufficient to prove that Willis committed a drug-trafficking crime.

Concerning the second element (knowing possession of a firearm), Willis maintains that the evidence is insufficient to show that he possessed the gun, because Falcon, who was carrying the drugs, had ample opportunity to put the gun in the car ashtray after Willis got out of the car. This contention is meritless. Willis has not challenged the sufficiency of the evidence on count one (felon in possession of a firearm); knowing possession of the firearm is an essential element of that offense. **United States v. Murray**, 988 F.2d 518, 521 (5th Cir. 1993). Accordingly, his knowing possession of the weapon for purposes of count three is established.

Finally, for the third element of the offense, Willis contends that the evidence is insufficient to establish a nexus between the weapon and the drug-trafficking.  According to Willis, there is no evidence that drugs were being distributed on the day of his arrest, or that a small, unloaded .25 caliber pistol would serve any immediate purpose in facilitating drug trafficking.  We disagree.  Willis' "business cards" (the pieces of cardboard with his alias and pager number) were in the car ashtray where the gun was found; two digital pagers and a cellular telephone also were found in the car.  This evidence amply supports an inference that Willis conducted his drug-trafficking business from his car.  The evidence also supports an inference that Falcon was delivering drugs to customers while Willis remained near the car and gun.

Although "the government had to prove as an essential element of the offense that a relationship existed between" the weapon and the drug-trafficking offense, it did not have to show (as Willis concedes) that Willis actually used or brandished the weapon. *United States v. Coburn*, 876 F.2d 372, 375 (5th Cir. 1989).  The evidence is sufficient if it shows that the "firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others".  *Id*.  "The fact that a weapon is `unloaded' or `inoperative' does not insulate the defendant from the reach of section 924(c)(1)".  *United States v. Contreras*, 950 F.2d 232, 241 (5th Cir. 1991), *cert. denied*, ___ U.S. ___, 112 S. Ct. 2276 (1992).  Even though the gun was

unloaded, the jury could have found that Willis had the opportunity or ability to use it for intimidation and protection, thus facilitating his possession with the intent to distribute cocaine base.

III.

For the foregoing reasons, the judgment is

**AFFIRMED.**