**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4676

PATRICK ALLEN BROWN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-96-418-PJM)

Submitted: July 14, 1998

Decided: September 11, 1998

Before WILKINS and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Beth M. Farber, Acting Federal Public Defender for the District of
Maryland, Baltimore, Maryland, for Appellant. Lynne A. Battaglia,
United States Attorney, Sandra Wilkinson, Assistant United States
Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Patrick Brown appeals his conviction and sentence for aiding and abetting the possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 2, 922(g) (1994), and aiding and abetting the possession with intent to distribute cocaine base in violation of 18 U.S.C. § 2 (1994), and 21 U.S.C. § 841(a)(1) (1994). Finding no error, we affirm.

In October 1996, a Bureau of Alcohol, Tobacco, and Firearms ("ATF") investigation revealed that Patrick Brown was selling drugs from 3419 Parkway Terrace Drive, Apartment 9, Suitland, Maryland. A confidential informant had told ATF agents that Brown was storing drugs and guns in a closet inside the apartment. On October 29, 1996, ATF agents followed Brown for several hours until he entered the apartment. Agents then knocked loudly on the door and announced that they had a search warrant.[1] After waiting six to ten seconds, agents forcibly opened the apartment door with their firearms drawn. Brown and Michael Kelley were inside the apartment. Agents immediately handcuffed and searched Brown, and then proceeded to search the apartment.

While searching the apartment one of the agents asked Brown and Kelley who owned the set of keys that were inserted in the outside lock of the living room closet door. Brown responded that the keys were his. Around the same time another agent, in the course of obtaining routine booking information, asked Brown for consent to search his car. Brown consented to the search. The agent then got the keys that had been found in the closet door and Brown informed him which one was his car key.

_____

[1] The agents had two warrants, one to search the apartment and one to search Brown. The agents purposely waited for Brown to enter the apartment so that they could execute the warrants simultaneously.

Agents found 2.75 grams of crack cocaine on Brown. Inside the closet agents found a locked safe. Using one of the keys on the closet key ring, the agents opened the safe and found two fully loaded hand-guns, razor blades, and an envelope addressed to Brown containing $700. Also in the closet the agents found a digital scale, empty Ziplock bags, numerous papers containing Brown's name, and over 50 grams of cocaine stashed inside different articles of clothing. The search of Brown's car uncovered no contraband.

Following the search of the apartment, four agents took Brown into a back bedroom, told him that he was under arrest, and read him his Miranda rights. Brown signed a written waiver and agreed to be inter-viewed. Brown then made statements to the agents that were admitted as evidence at trial. He made additional statements to agents as they transported him to the police station. These statements were also introduced at trial.

Brown first claims that the agents forced entry into the apartment violated the reasonableness standard of the Fourth Amendment and the federal "knock and announce" statute, 18 U.S.C. § 3109 (1994). Fourth Amendment rights are personal, and to challenge the legality of a search under the Fourth Amendment a defendant must show that he himself had a "legitimate expectation of privacy" in the area searched. Rakas v. Illinois, 439 U.S. 128, 143 (1978); United States v. Salvucci, 448 U.S. 83, 91-92 (1980). If a defendant has no such expectation then he may not challenge the legality of the search or have evidence obtained during the search suppressed. A legitimate expectation of privacy is usually demonstrated by showing that the defendant had some property or possessory interest in the area searched. See Rakas, 439 U.S. at 148. Mere possession of the seized property is insufficient by itself to establish a legitimate expectation of privacy. Salvucci, 448 U.S. at 92. The proponent of a motion to suppress bears the burden of showing that he had some interest which rendered his expectation of privacy legitimate. Rakas, 439 U.S. at 131 n.1.

The apartment in which Brown was arrested was leased to Michael Kelley. Brown did not live in the apartment. The only evidence sug-gesting that Brown had a property or possessory interest in the apart-ment was Brown's testimony that he had been in the apartment before

3

and that he stored some of his possessions inside the apartment. We find this evidence insufficient to demonstrate that Brown had a legitimate expectation of privacy in the apartment. Therefore, he may not raise a Fourth Amendment challenge to the legality of the search of the apartment preceding his arrest.**2**

Brown argues, however, that his mere presence at the apartment at the time of the search gives him standing to challenge the search as a violation of 18 U.S.C. § 3109 (1994). While we recognize that some of our sister circuits have suggested that a defendant may have standing to challenge a forced entry under § 3109 even if he lacks standing to raise a Fourth Amendment challenge, see United States v. Lockett, 919 F.2d 585, 588-90 (9th Cir. 1990); United States v. Garcia, 741 F.2d 363, 366 n.2 (11th Cir. 1984), we need not address that issue here. Assuming Brown had standing to allege a violation of § 3109, the record shows that the agents adequately complied with the statute in entering the apartment. The evidence showed that agents knocked, announced that they had a search warrant, and then waited six to ten seconds before forcibly entering the apartment. The agents had observed Brown enter the apartment five minutes prior to executing the search warrant and heard movement inside the apartment after they knocked and announced their presence. Further, the agents knew Brown was a convicted felon known to possess weapons. Accordingly, we are persuaded that the agents acted in accordance with § 3109, and the short delay between the knock and the forced entry was reasonable. See United States v. Kennedy, 32 F.3d 876, 882-83 (4th Cir. 1994).

Brown next claims that statements he made at the time of his arrest were both involuntary and obtained in violation of his Miranda rights. He first alleges that his pre-Miranda admission to owning the keys found in the outside lock of the closet was made under extremely coercive circumstances. Although the government did not use the

_____

**2** The fact that the agents had a separate search warrant to search Brown does not somehow confer upon him the right to contest the manner in which the agents entered the apartment. This argument is essentially the argument rejected by the Court in Rakas that standing may not be conferred on "one against whom the search was directed." Rakas, 439 U.S. at 134-35 (quoting Jones v. United States, 362 U.S. 257, 261 (1960)).

4

statement as evidence at trial, Brown asserts that the coercive circumstances that produced the statement served to taint all statements he made thereafter. Findings of fact made by a district court in ruling on a motion to suppress are reviewed for clear error, but the ultimate refusal to suppress evidence is reviewed de novo. United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). It is undisputed that an agent asked Brown whether the keys in the closet were his prior to reading Brown his Miranda rights. However, a statement obtained in violation of Miranda will not serve to render any subsequent post-Miranda statements involuntary under the "fruit of the poisonous tree" doctrine unless the defendant demonstrates that the unwarned statement was not voluntary within the meaning of the Due Process Clause. See United States v. Elie, 111 F.3d 1135, 1141-43 (4th Cir. 1997) (recognizing that "fruit of the poisonous tree" doctrine does not apply to Miranda violations because failure to deliver Miranda warnings is not itself a constitutional violation). Brown contends that his unwarned statement about the keys was involuntary because it was obtained shortly after eight to ten armed agents burst into the apartment, ordered him to the floor, and then searched and handcuffed him. The record reveals, however, that Brown made the statement after the agents had holstered their weapons and while Brown was seated on a couch. Brown offered no evidence suggesting that officers harmed or threatened him in an effort to get him to make incriminating statements. Because Brown's statement admitting ownership of the keys was elicited without the aid of any coercive conduct by the arresting agents, we find the statement voluntary under the Fifth Amendment. See id. at 1143-44.

Brown further alleges that his admission to owning the aforementioned keys made in the course of giving consent to search his vehicle was also obtained in violation of Miranda and his Due Process rights.[3] DEA Agent George Ogilvie testified during a suppression hearing

_____

[3] At trial the government attempted to elicite from Brown on cross-examination that he showed Agent Ogilvie which key on the key ring was his car key. Brown denied identifying the key and testified that Agent Ogilvie picked the key out on his own. Nevertheless, the government's mention of Brown's statement on cross-examination requires us to determine if the statement should have been suppressed as involuntary or obtained in violation of Miranda.

5

that as a routine booking question he asked Brown for permission to search his car. After Brown consented to the search another agent handed Agent Ogilvie the keys that had been removed from the closet door. Agent Ogilvie then asked Brown if those were his keys for the purpose of searching Brown's car. Brown responded that the keys were his and pointed to his car key.

Initially, we find nothing suggesting that Brown's identification of his car key was involuntary and elicited in violation of the Due Process Clause. Hence, our analysis turns to whether the "statement" was obtained in violation of Miranda. Under Miranda, police must advise a defendant of his right to remain silent and his right to counsel before each custodial interrogation. Miranda v. Arizona , 384 U.S. 436, 444 (1966). Because Brown was in custody at the time of the questioning, the issue is whether Agent Ogilvie's questioning constituted interrogation for Miranda purposes. In Rhode Island v. Innis, 446 U.S. 291 (1980), the Supreme Court explained that:

> the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

Id. at 301 (footnotes omitted). The focus, however, is not upon police intent, but on the suspect's perceptions, the nature of the question asked, and the attendant circumstances. See id.  We find that Brown's identification of his car key in the course of giving consent to search his car does not support the conclusion that he considered himself under interrogation at the time. See United States v. Payne, 954 F.2d 199, 202-03 (4th Cir. 1992). Accordingly, we find no error in the district court's refusal to suppress Brown's statement identifying his car key to Agent Ogilvie. Having found that Brown's statements regarding his keys were not involuntary, we reject his claim that his statements following his formal arrest and the administration of Miranda warnings were the product of prior coercion. In addition, we reject Brown's claim that agents coerced him into waiving his Miranda rights by informing him that he was in serious trouble given the evidence seized from his apartment and his prior criminal record. This

6

court has repeatedly recognized that "`[t]ruthful statements about [the defendant's] predicament are not the type of "coercion" that threatens to render a statement involuntary.'" Elie, 111 F.3d at 1146 (quoting United States v. Pelton, 835 F.2d 1067, 1072 (4th Cir. 1987)).

We next consider whether the district court erred in allowing the government to introduce evidence relating to Brown's 1991 conviction for possession with intent to distribute cocaine. A district court's evidentiary rulings are entitled to substantial deference and will not be reversed absent a clear abuse of discretion. United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994). At trial Brown argued that the cocaine found in the apartment closet was not his. The government introduced evidence of Brown's prior conviction in an effort to show that he was in constructive possession of the cocaine. Federal Rule of Evidence 404(b) provides that evidence of prior "crimes, wrongs, or acts," when relevant, is admissible unless offered to prove "the character of a person in order to show action in conformity therewith." The rule contains a non-exhaustive list of those purposes for which this evidence may be admitted: "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). We find that the district court acted within its discretion in allowing the government to introduce evidence of Brown's prior conviction under Rule 404(b) to show his intent to exercise dominion and control over the drugs. See United States v. Willis, 6 F.3d 257, 262 (5th Cir. 1993). The district court also properly exercised its discretion in determining that the probative value of the evidence was not substantially outweighed by its prejudicial impact on the jury. See Fed. R. Evid. 403.

Brown's final claim is that the district court erred in sentencing him to life imprisonment under 21 U.S.C. § 841(b)(1)(A) (1994),**4** because one of the prior convictions used to support the life sentence was based on an unknowing and involuntary plea. This court reviews legal issues related to sentencing de novo. See United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996). Brown asserts that at his 1991 plea hearing he never admitted to the conduct that the state proffered as

_____

**4** A defendant convicted of distributing cocaine who has two prior felony drug convictions is subject to a mandatory term of life imprisonment. See 21 U.S.C. § 841(b)(1)(A) (1994).

the factual basis for his guilty plea. Thus he argues that his failure to agree with the state's version of the events giving rise to his conviction rendered his guilty plea involuntary. At his state plea hearing Brown admitted that he gave cocaine to a friend with the intention of meeting that friend later at a party to use the cocaine. Under Virginia law this conduct amounts to the distribution of cocaine. See Moreno v. Baskerville, 452 S.E.2d 653, 655 (Va. 1995); Wood v. Commonwealth, 197 S.E.2d 200, 202 (Va. 1973) (noting that distribution encompasses virtually any delivery or transfer of possession of drugs from one person to another). Because Brown admitted to conduct that provided a sufficient factual basis for his plea, any disagreement he may have had with the government's version of the events giving rise to his conviction did not serve to render his plea involuntary. We therefore reject Brown's claim that his 1991 guilty plea was based on an invalid guilty plea, and find no error in the district court's consideration of the conviction for sentencing purposes.

Finding no merit to Brown's claims, we affirm his conviction and sentence. We deny Brown's motion for oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED