# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

-----------------------------------
No. 96-30588
-----------------------------------

LARRY D. CROWE and SUE ELLEN CROWE SILMAN
as the ADMINISTRATRIX OF REBA COODY CROWE

Plaintiffs-Appellants,

VERSUS

SAM O. HENRY, III, the LAW FIRM OF BLACKWELL, CHAMBLISS,
HOBBS & HENRY, MURPHY BLACKWELL, JR., FRANK N. CHAMBLISS,
JAMES A. HOBBS, CHET HARROD, DOUGLAS C. CALDWELL,
K. TOD CAGLE and CONTINENTAL CASUALTY CO.

Defendants-Appellees

-------------------------------------------------------------

Appeal from the United States District Court
for the Western District of Louisiana

-------------------------------------------------------------

June 4, 1997

Before POLITZ, Chief Judge, DeMOSS, Circuit Judge, and JUSTICE,[*] District Judge.

JUSTICE, District Judge:

Plaintiffs-appellants, Larry D. Crowe and Sue Ellen Crowe Silman, as the Administratrix of Reba Coody Crowe (collectively referred to as "Crowe"), appeal the district court's summary judgment in favor of the defendants, Sam O. Henry, III ("Henry"); the law firm of Blackwell, Chambliss, Hobbs & Henry ("the law firm"); Murphy Blackwell, Jr., Frank N. Chambliss, James A. Hobbs, Chet Harrod, Douglas C. Caldwell, K. Tod Cagle (collectively, "the partners"); and Continental Casualty Company ("the law firm's insurance company"). We REVERSE and REMAND.

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

## I.      FACTS AND PROCEDURAL HISTORY

The facts in the case are exceedingly complicated, and they will not be completely reviewed here.[2] According to the evidence presented by Crowe, Henry was his long-time lawyer, business associate, and friend, whom he trusted completely. Initially, Henry advised Crowe to transfer certain land and money ("the properties") to Henry, in order to hide them from a potential adverse legal claim. Although Henry promised to return the properties once the adverse claim was removed, he advised Crowe to transfer the properties to him without a counter letter. Crowe took Henry's advice. Henry then undertook a convoluted series of transactions to reorganize and reconfigure the properties. These transactions included channeling the properties through numerous bank accounts, reinvesting certain portions in a joint farming venture between Henry and Crowe, using the properties as collateral for the purchase of other properties, and using some of the properties to purchase a condominium for his son. After several years, Crowe's properties were so interwoven with Henry's that they were barely distinguishable. When Crowe eventually asked Henry for an accounting, Henry did not provide one. Crowe thereupon asked for his properties back, and Henry refused to return them.

Crowe then brought suit against Henry, Henry's law firm, the partners, individually, and the law firm's insurance company. Crowe alleges violations of the Racketeering Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1964, in addition to several state law violations. In this regard, he alleges that the series of transactions which made the properties virtually untraceable by him was a scheme by Henry to defraud him of those properties. Henry admits that he took Crowe's properties, that he promised to return them, and that he has not done so. Henry claims, however, that he never intended to defraud Crowe, but simply decided to keep the properties as satisfaction for Crowe's debts to him.

---

[2] For a more complete recitation of the allegations involved, see this Court's prior opinion in this matter. *Crowe v. Henry*, 43 F.3d 198, 201-03 (5th Cir. 1995).

Previously, the district court granted the defendants' motion to dismiss the RICO claims, for failure to state a claim. This court, however, reversed the dismissal, in part, and instructed the district court to allow Crowe to proceed on his claims against Henry for RICO violations under 18 U.S.C. §1962 (a) and (b), and on his claims against the law firm and the partners for aiding and abetting. *Crowe v. Henry*, 43 F.3d 198, 207 (5th Cir. 1995). Subsequently, the district court granted summary judgment and dismissed all claims. Crowe again appeals to this court.

## II.    STANDARD OF REVIEW

This court reviews the grant of summary judgment *de novo*. *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir. 1996). Summary judgment is proper, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A factual dispute is "genuine," if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). When ruling on a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986) (quoting *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962)); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 975 (5th Cir. 1991). The presiding judge is not to weigh the evidence nor engage in credibility determinations. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

## III.    DISCUSSION

In order to bring a successful civil RICO claim, Crowe must prove the following three elements:

(1) the identification of a person, who,

(2) through a pattern of racketeering activity,

(3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise.

18 U.S.C. § 1962 (a), (b); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232, 109 S.Ct. 2893, 2897 (1989); *In re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993). To prove a pattern of racketeering activity, it is necessary that Crowe present evidence of at least two predicate acts of racketeering activity by Henry. 18 U.S.C. § 1961(5); *H.J. Inc.*, 492 U.S. at 237, 109 S.Ct. 2899. As predicate acts of racketeering activity, Crowe alleges Henry committed mail fraud, wire fraud, and financial institution fraud.[3] 18 U.S.C.§ 1961 (listing predicate acts). Crowe is required to establish that Henry had fraudulent intent in committing the acts which constituted the claimed frauds. Finding that Crowe failed to present evidence of Henry's fraudulent intent, the district court granted summary judgment on all of plaintiff's claims.

### A.    Mail and Wire Fraud

RICO mail fraud and wire fraud require, *inter alia,* evidence of intent to defraud, that is, evidence of "a scheme to defraud by false or fraudulent pretenses, representation, or promises." *Landry v. Airline Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 428 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244 (1990). *See also In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993); *United States v. Shively*, 927 F.2d 804, 813 (5th Cir.), *cert. denied*, 501 U.S. 1209, 111 S.Ct. 2806 (1991). Circumstantial evidence can be sufficient to prove fraudulent intent in mail and wire fraud cases. *United States v. Salvatore*, 110 F.3d 1131, 1136-37 (5th Cir. 1997); *United States v. Robichaux*, 995 F.2d 565 (5th Cir.), *cert. denied*, 510 U.S. 922, 114 S.Ct. 322 (1993); *United States v. Aubrey*, 878

---

[3]    In the district court, Crowe also alleged that Henry stole goods in interstate commerce. Crowe does not maintain this claim on appeal.

F.2d 825, 827 (5th Cir.), *cert. denied*, 493 U.S. 922, 110 S.Ct. 289 (1989) ("Proof of intent may arise by inference from all of the facts and circumstances surrounding the transactions.").

Fraudulent intent may be found from circumstantial evidence that one party arranged matters with another party in such a way as would facilitate the commission of fraud, especially where the evidence further shows that the first party gained money or advantage at the expense of the second. *Landry,* 901 F.2d at 429, *United States v. Jimenez,* 77 F.3d 95, 97 (5th Cir. 1996), *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995)*; see also United States v. Sokolow*, 91 F.3d 396, 406 (3d Cir. 1996), *cert. denied*, 117 S.Ct. 960 (1997). For example, in *Landry*, a group of pilots alleged that their employer, union, and union representative had defrauded them by arranging for the pilots to lose their jobs and their retirement benefits unless they relocated to another country. The summary judgment evidence showed that the pilots were forced into this choice, because the employer, union, and union representative had secured a strategic advantage in negotiations by means of a series of unfulfilled promises and misleading omissions of material facts. The evidence further showed that the employer, union, and union representative each materially benefitted from forcing this choice upon the pilots. "Only the pilots lost out." *Landry*, 901 F.2d at 429. This circumstantial evidence of fraudulent intent was held sufficient for the pilots to survive summary judgment on their claim of RICO mail fraud. *Id*. at 430.

The district court held that Crowe had not submitted "a *soupçon* of evidence which raises an issue as to Henry's intent." Memorandum Ruling and Judgment at 7. We disagree. The evidence that Henry gained control and reorganized Crowe's properties in such manner as to permit Henry to most easily defraud Crowe, combined with evidence that Crowe lost money from

Henry's control and reorganization of the properties,[4] constitutes circumstantial evidence sufficient to permit a reasonable trier of fact to find that Henry had the requisite fraudulent intent.[5]

The district court also ruled against Crowe by reason of the court's perception that he had failed to disprove Henry's explanation of events between them. (Henry claimed that he never intended to defraud Crowe, but merely decided to keep Crowe's properties in satisfaction for Crowe's debts to him.) Crowe does not need to disprove Henry's explanation of the situation in order to survive summary judgment. He need only present evidence that would permit a reasonable finder of fact to accept his interpretation of the facts. This he has done. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 2077 (1992). *Cf. United States v. Salvatore*, 110 F.3d at 1137 (5th Cir. 1997) ("Although the tapes do not rule out the [defendants'] contention that they engaged in arms-length, legitimate business negotiations with [an organized crime group], it is also reasonable to draw, as the jury did, more inculpatory inferences from the tapes."). The decision as to whether to believe Crowe's or Henry's

---

[4] Henry disputes Crowe's claim that he lost money in these transactions. Due, in part, to the long and complicated series of transactions involved, the question of who lost money to whom in this scheme remains a question of fact for the jury to decide.

[5] The district court held that Crowe's fraud claim could not survive, because he had no direct evidence of Henry's fraudulent intent. The district court cited two cases in support of this proposition: *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir. 1996) and *Kansa Reinsurance Co. Ltd. v. Congressional Mortgage Corp.*, 20 F.3d 1362 (5th Cir. 1991). However, both of these cases are distinguishable from the case at hand, as both cases involved allegations of fraud under Texas law, the elements of which differ from those for federal mail and wire fraud, *Compare Kansa*, 20 F. 3d at 1375 *with Landry*, 901 F.2d at 428.
Also, the plaintiffs in both cases had failed to present circumstantial evidence of fraudulent intent. In *S.W.S. Erectors*, the only evidence of fraudulent intent was an affidavit by the plaintiff's president, in which he contradicted his own prior deposition testimony. "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors*, 72 F.3d at 495 (citations omitted). In *Kansa*, there was evidence that the defendant had prepared a document that contained false information, but there was no evidence that defendant had known the information was false or had reason to know that the information was false. *Kansa*, 20 F. 3d at 1375. Similarly, there was evidence that the defendant had notarized inconsistent documents, but no evidence to demonstrate that defendant knew the contents of the documents she was notarizing. *Id.* at 1376. The court held that the fraud claim could not survive without direct evidence of fraudulent intent, since the evidence presented could not be considered circumstantial evidence of fraud. *Id.*

explanation of the facts requires the type of credibility determination by the court that is plainly inappropriate on motion for summary judgment.

Finally, it was error for the district court to find that Crowe could not prove fraudulent intent, because Crowe had once stated in a deposition that, "When we went into it, I thought the land would come back to me. And Mr. Henry, I think, thought it would come back to me." When read in context, the meaning of this statement is unclear,[6] and, so, its interpretation must be left to the trier of fact. *Eastman Kodak,* 504 U.S. at 456, 112 S.Ct. at 2077. Moreover, Crowe presented evidence that, even if Henry did not have fraudulent intent when he first gained control of the properties, he formed such intent shortly thereafter. A reasonable trier of fact might find that, once Henry obtained Crowe's property, he realized how easily he could take advantage of Crowe, and he then decided to defraud Crowe of the properties by arranging a series of transactions that would make it impossible for Crowe to reclaim his properties. Since there were more than two mailings and telephone calls to Crowe involved in the series of transactions which took place after Henry gained initial control of the properties, sufficient evidence existed to support a reasonable trier of fact in finding two predicate acts of mail or wire fraud in this latter series of transactions.

### B. Financial Institution Fraud

Crowe alleges that certain monies in one of Henry's bank accounts actually belonged to him; specifically, he asserts that Henry was merely holding those funds "in trust" for him. Crowe claims, therefore, that when Henry wrote checks on the funds he was holding for Crowe, he committed financial institution fraud. For a claim of financial institution fraud to succeed, it must be established

---

[6] Crowe would have this statement interpreted in the following way: In the event that the adverse legal claims were not resolved to their mutual satisfaction, he and Henry considered the prospect that it might be impossible to transfer the properties back to Crowe personally, and that it might be necessary that they be returned, instead, to Crowe's brother or mother. However, both he and Henry thought that the adverse legal claims could be resolved in such manner that the properties could be returned directly to Crowe. When read in the context of the portion of the deposition from which the quotation is taken, this interpretation is plausible.

that the acts alleged exposed the custodial bank "to the risk of loss, *i.e.*, . . . to civil liability." *United States v. Briggs*, 965 F.2d 10, 12-13 (5th Cir. 1992) (citing *United States v. Lemons*, 941 F.2d 309, 315-316 (5th Cir. 1991)), *cert. denied*, 506 U.S. 1067, 113 S.Ct. 1016 (1993); *see also United States v. Holley*, 23 F.3d 902, 908 (5th Cir.), *cert. denied*, 513 U.S. 1043, 115 S.Ct. 635 (1994), *and cert. denied*, 513 U.S. 1083, 115 S.Ct. 737 (1995). Crowe has failed to explain how Henry, in writing checks on a bank account in Henry's name, could have exposed the custodial bank to liability. The district court correctly ruled that plaintiff had presented no evidence to support a finding of financial institution fraud as a predicate act for RICO liability. Nonetheless, because the evidence of mail and wire fraud is sufficient to establish a pattern of racketeering activity, the grant of summary judgment as to the underlying RICO claim will be reversed.

### C.    Claims against the Law Firm, the Partners, and Continental

The district court dismissed the claims against the law firm, the partners, and the firm's insurance company, because proof of Henry's RICO violation is a necessary prerequisite to the liability of any of these parties. "Without [a RICO] violation, there can be no aiding, abetting, or vicarious liability." Memorandum Ruling and Judgment at 11. Inasmuch as we reverse the grant of summary judgment on the underlying RICO violation, we also reverse the grant of summary judgment on these related claims.

## IV.    CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** to the district court, for further proceedings in accordance with this opinion.