# IN RE: TUTU WATER WELLS CONTAMINATION LITIGATION, THIS DOCUMENT RELATES TO TEXACO, INC. AND TEXACO CARIBBEAN, INC. ("TEXACO"), SUCCESSOR TO VERNON MORGAN

D.C. Civil No. 1996-54(B)

District Court of the Virgin Islands

Division of St. Croix

November 24, 1999

278

ADDISON J. MEYERS, ESQ., *O'Connor & Meyers, P.A.*, Coral Gables, FL., *for Plaintiffs*

CHARLES J. CURRAN, ESQ., Tallahassee, FL., *for Plaintiffs*

TRESTON E. MOORE, ESQ., St. Thomas, U.S.V.I., *for Plaintiffs*

KIMBERLY BOLDT, ESQ., *The Boldt Law Firm*, Miami, FL., *for Plaintiffs*

WILFREDO A. GEIGEL, ESQ., Christiansted, St. Croix, U.S.V.I., *For General Accident Co. of Puerto Rico, LTD.*

DENISE FRANCOIS, ESQ., *Hodge & Francois*, St. Thomas, VI., *for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*

HARRY P. COHEN, ESQ., *Rosenman & Colin, LLP*, New York, NY., *for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*

ROBERT REEDER, ESQ., *Cozen & O'Connor*, Philadelphia, PA., *for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*

THOMAS MCKAY, III, ESQ., *Cozen & O'Connor*, Philadelphia, PA., *for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly*

279

*designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*

BROTMAN, *Judge*

## I. INTRODUCTION AND BACKGROUND

This case arises out of an insurance coverage dispute between Third-Party Plaintiffs Texaco Inc. and Texaco Caribbean, Inc., (collectively hereinafter "Texaco") as the Successor to Vernon Morgan, and several purported insurance carriers it claims have breached contracts to insure Vernon Morgan and have refused, in bad faith, to defend and indemnify him against numerous environmental actions. These actions resulted from Vernon Morgan's alleged negligence in allowing hazardous chemicals to be discharged from underground storage tanks at the Tutu Texaco Service Station ("Service Station") into the Turpentine Run Aquifer in St. Thomas, United States Virgin Islands.

Beginning in 1972, Texaco Caribbean Inc., a subsidiary of Texaco Inc. leased property to Morgan from which Morgan operated the Tutu Texaco Service Station. (*See* Statement of Undisputed Material Facts In Support of Fireman's Fund's and Cigna's Motion For Summary Judgment on the Pollution Exclusion ("Undisputed Pollution Exclusion Facts" at ¶ 2). Morgan is the owner, sole shareholder, and an employee of Tutu Texaco Service Station. In September 1976, Morgan discovered a pipe leak that resulted in a loss of approximately 2,200 gallons of gasoline. (*See id.* at ¶ 16-17). In late 1977, Morgan discovered the loss of approximately 240 gallons of fuel due to a leak in a fuel delivery line. (*See id.* at ¶ 18). After both discoveries, Texaco was apprised of the situation. Additional line leaks resulting in losses of approximately 1,200 and 100 gallons, respectively, were reported in 1980 and 1981. (*See id.* at ¶¶ 19, 21). Another leak was discovered in 1987. (*See* id. at ¶ 24). In addition to the reported leaks, inventory audits conducted in 1986 and 1987 revealed gasoline discrepancies of approximately 9,000 gallons. (*See id.* at ¶¶ 23, 25).

In 1989, various claimants instituted litigation against Texaco and Morgan for damages caused by the aforementioned discharges of hazardous substances from the storage tanks and the fuel delivery system located at the Site. (*See* Texaco's Appendix to

Omnibus Statement of Material Facts at Issue ("Omnibus Facts") at Ex. 1.). Upon receipt of the complaints Morgan sent notification of the claims to the West Indies Insurance Agency, which had issued Morgan's insurance policies. (*See* Texaco's Statement of Material Facts Not at Issue in Support of Motion for Partial Summary Judgment on General Agency and Notice at ¶¶ 2-6.).

Morgan was represented by John Zebedee, Esq. during the *Total Vision, Four Winds,* and *Harthman* ("underlying litigation") litigation against him. Payment for Morgan's defense was originally provided by American Trust Insurance ("ATI") after June 5, 1990. On or about May 1991, ATI refused to continue to provide Morgan a defense in the underlying litigation. (*See* Cigna's Statement of Undisputed Material Facts in Support of Fireman's Fund's and Cigna's Motion for Summary Judgment: Third-Party Plaintiffs' Claims for Bad Faith as a Matter of Law (hereinafter "Undisputed Bad Faith Facts") at ¶¶ 1-3).

During this time period, Zebedee sought coverage for Morgan from defendant Cigna[1] (*See* Cigna's Undisputed Bad Faith Facts at ¶¶ 13-40). After numerous correspondence between Zebedee and Cigna employees failed to provide complete details of the relevant policy's terms and conditions, *see id.*, the insurer refused coverage via an October 28, 1991 letter which stated, in pertinent part, that:

> Despite our best efforts . . . we have been unable to produce, nor have you been able to produce, copies of the actual policies issued to Morgan and/or Tutu Texaco. Without more information, we are unable to confirm the existence and/or terms, conditions, limitations or endorsements of these policies. Accordingly, since we can-

---

[1] The Court notes that recently, at oral argument held on November 18th, 1999, the parties stipulated on the record that the named defendants AFIA, CIGNA Corporation, CIGNA International Corporation and Insurance Company of North America were dismissed with prejudice from the case while Fireman's Fund Insurance Company ("Fireman's Fund") remained as a defendant. The parties further agreed that any action by Cigna entities would be attributable to defendant Fireman's Fund. Because this stipulation occurred subsequent to the filing of the instant motion, and since the parties agreed that any actions by Cigna entities will be attributable to Fireman's Fund, for purposes of administrative convenience "Cigna," signifies the actions of Third-Party Defendants CIGNA Corporation, Fireman's Fund Insurance Company, ("Firemen's Fund"), AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America.

not determine what coverage may have been written, we are further unable to provide any defense or indemnity to Morgan and/or Tutu Texaco for these claims.

In the event you are able to locate additional information which might indicate that our further review of these claims is warranted or should you otherwise wish to discuss this matter, please feel free to contact me at the above number.

(Texaco's Appendix to Omnibus Statement of Material Facts at Issue ("Omnibus Facts") at Ex. 66). It is important to note that just prior to its October 28, 1991 refusal letter, Zebedee had contacted Cigna and informed the defendant that Morgan was considering a proposal from Texaco which contemplated Texaco's assumption of Morgan's defense costs in exchange for an assignment of rights. (*See* Ex. 13 of Cigna's Appendix to Cigna's Br.: Plaintiff's Claims for Bad Faith Fail as a Matter of Law).

As litigation concerning the environmental damage continued in the Virgin Islands, Texaco on its own behalf filed an action against numerous insurers in the Superior Court of the State of California for the County of Los Angeles entitled *Four Star Oil & Gas Company, et al. v. Allianz Insurance Company et al.*, Case No. BC 036944 ("California Litigation"). Included among Texaco's claims in the California Litigation were its incurred and anticipated liabilities arising at and from the Tutu Site. (*See* Cigna's Statement of Undisputed Material Facts in Support of Fireman's Fund and Cigna's Motion for Partial Summary Judgment Based Upon the Four Star Agreement (hereinafter "Undisputed Four Star Facts") at ¶¶ 7-11). Ultimately Texaco agreed to a comprehensive release of environmental coverage claims against various insurance companies in the context of the California Litigation.

Specifically, pursuant to an "Agreement of Settlement, Compromise and Release" dated May 10, 1993, Cigna agreed to pay Texaco $20,250,000.[2] (*See* Fireman's Fund's and Cigna's Motion for Partial

---

[2] In the Release Agreement, "CIGNA" included CIGNA Insurance Company, Insurance Company of North America, Insurance Company of North America (U.K.) Limited, CIGNA Property and Casualty Insurance Company, California Union Insurance Company, Atlantic Employers Insurance Company, CIGNA insurance Company of

Summary Judgment Based Upon the Four Star Agreement at Ex. 1 ("Release Agreement")). Included within the release agreement was a warranty provision which provided, in pertinent part, that:

> Texaco agrees that it will not commence, maintain, initiate or prosecute, or assist or cooperate with any other person or entity to commence, maintain, initiate or prosecute, any action, suit, proceeding or claim . . . against CIGNA whom it released herein, as to any matters released to it in the preceding paragraphs.

Release Agreement at ¶ 4.3.

Two years after the Release Agreement was executed, Texaco settled all of its outstanding claims against Morgan in an agreement executed June 27, 1995 entitled "Consent To Judgment and Assignment" ("the Assignment"). (*See* Omnibus Facts at Ex. 70). Under the Assignment, Morgan consented to the entry of judgment against him on the underlying actions in the amount of $16,682,392. *See* Assignment at ¶ 2. Texaco agreed not to execute, record, or collect on its judgment against him. *See id.* at ¶ 7. In exchange, Morgan agreed to assign to Texaco all claims that Morgan had against "any and all insurance carriers insuring Morgan and/or Texaco Tutu Service Station, for the claims of the Plaintiffs and the crossclaims of Texaco for contribution and indemnity[.]" *Id.* at ¶ 3.

On December 7, 1995, Morgan filed a Third-Party Complaint against various insurers claiming bad faith and seeking defense costs and indemnity under the alleged policies issued to Morgan. On March 2, 1998, this Court found that Texaco, not Morgan, was the real party in interest as "successor" to Morgan. (*See* Order on Motions For Summary Judgment entered on March 2, 1998); (*See* Opinion On Motions For Summary Judgment dated March 2, 1998). Accordingly Texaco was substituted as a third party plaintiff. (*See* Opinion On Motions For Summary Judgment dated March 2, 1998 at 12).

---

Illinois, CIGNA Insurance Company of Texas, Pacific Employers Insurance Company, CIGNA Reinsurance Company (U.K.) Limited, Central National Insurance Company of Omaha, and Highlands Insurance Company.

In its amended third-party complaint, Texaco asserted "bad faith" and 'failure to defend and indemnify claims' against the various insurance companies with which Vernon Morgan had contracted, including Cigna and General Accident. The policies under which Morgan's claims are based contain pollution exclusion clauses. These pollution exclusions provide, in pertinent part, that coverage is provided only if the "discharge, dispersal, release or escape is sudden and accidental." (*See* Undisputed Pollution Exclusion Facts at ¶ 49).

On September 15th, 1999 Cigna brought a motion for summary judgment, arguing that the language of the pollution exclusion clearly bars coverage based on the undisputed facts. In addition, Texaco filed a summary judgment motion of its own on September 20th, 1999, requesting that Cigna's counterclaims of legal fraud and negligent misrepresentation be dismissed. On November 18, 1999, the Court heard argument on these and other outstanding motions.[3] This opinion addresses the above mentioned motions.

## II. DISCUSSION

## 1) STANDARD FOR SUMMARY JUDGMENT

■ The standard for granting summary judgment is a stringent but surmountable one. That is, summary judgment is appropriate only when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n.2 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence in favor of the non-moving party. *Serbin*, 96 F.3d at 69 n.2. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

---

[3] The other motions heard at the November 18th oral argument included Cigna's Motion for Summary Judgment regarding the enforceability of the consent judgment, and Texaco's request for a hearing with respect to issues of the real party in interest as to defendants' Cigna and Fireman's Fund.

Supreme Court decisions mandate that a motion for summary judgment must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the non-moving party.'" *Lawrence v. National Westminster Bank of New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996) (quoting Anderson, 477 U.S. at 248). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Instead, the non-moving party must "by affidavits or by depositions and admissions on file 'mak[e] a showing sufficient to establish [that a genuine issue of material fact exists as to each] element essential to that party's case.'" *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1991) (declaring that a non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

## 2) TEXACO'S SUMMARY JUDGMENT MOTION TO DISMISS CIGNA'S COUNTERCLAIMS OF LEGAL FRAUD AND NEGLIGENT MISREPRESENTATION

Texaco's motion argues that Cigna's Counterclaims for Legal Fraud and Negligent Misrepresentation with respect to the Four Star Agreement are unsupported by evidence and should therefore be dismissed.

In a prior opinion, this Court articulated the four elements of legal fraud:

(1) a false representation of a material fact
(2) the defendant's intent that the statement should be acted upon
(3) reliance upon such a statement
(4) damages

*See In re Tutu Water Wells*, 40 V.I. 279, 32 F. Supp. 2d 800, 805 (D.V.I. 1998) (citing *Government Guarantee Fund of the Republic of Finland v.*

*Hyatt Corp.*, 35 V.I. 356, 955 F. Supp. 441 (D.V.I. 1997)). In that opinion the Court rejected the plaintiff's request that the counterclaims be dismissed for a failure to state a claim, finding instead that Cigna's allegations had established a basis upon which relief could be granted. *See* 32 F. Supp. 2d at 806. Arguing that Cigna has subsequently failed to provide competent evidence of each of the first three elements, Texaco contends that a grant of summary judgment is warranted.

As a threshold matter, Texaco argues that "the Release Agreement does not include the policies issued to Vernon Morgan, nor does Morgan release his claims under his policies in the Release Agreement[, h]ence, Morgan's claims under the policies he purchased are not released by Cigna's payment to Texaco, and cannot form the basis for a fraud claim." (Texaco Br. at 4).

This statement, however, confuses the relevant issue by conveniently omitting Texaco from the equation. The fraud alleged by Cigna concerns an alleged misrepresentation by Texaco regarding its promise not to "commence, maintain, initiate or prosecute, or assist or cooperate with any other person or entity to commence, maintain, initiate or prosecute, any action . . . against Cigna." (*See* Release Agreement, ¶ 4.3, Ex. B). Thus, the focus is not on Vernon Morgan's legal rights against Cigna, but rather Texaco's alleged attempt to acquire its own legal rights against the defendant while it was simultaneously negotiating an agreement in which it expressly stated it would not pursue claims against the insurer. Moreover, this Court has already concluded that "[w]hether or not the agreement was intended to include Texaco's current position as Successor to Vernon Morgan is the ultimate issue of material fact and must be presented to a jury to determine." *See In re Tutu Water Wells Contamination Litigation*, 40 V.I. 265, 32 F. Supp. 2d 808, 815 (D.V.I. 1998). The necessary corollary to such a finding is that, should a reasonable juror conclude that the Four Star Agreement contemplated third party assignments, any knowing misrepresentations by Texaco would clearly be relevant.

*Evidence of Misrepresentation*

Addressing issues of misrepresentation, the Court, in a prior opinion, noted that:

286

Restatements (Second) of Torts provides that "[a] representation of the maker's own intention to do or not do a particular thing is fraudulent if he does not have that intention." However '[t]he intention of the promisor not to perform an enforceable . . . agreement *cannot be established solely by proof of its nonperformance,* nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into."

*In re Tutu Water Wells Contamination,* 32 F. Supp. 2d at 805 (quoting RESTATEMENT (SECOND) OF TORTS, § 530 cmt.d., at 65) (emphasis added). Thus applying the restatement to the instant matter, it is clear that in order for Cigna to succeed on its legal fraud crossclaim, it must submit evidence that goes beyond proof Texaco's failure to honor any agreement.

Texaco claims that Cigna has failed to provide any evidence which establishes that the plaintiff made false representations with respect to profit losses. While Cigna's brief asserts that "Texaco misrepresented to Cigna that Texaco was the party liable for all claims and losses arising from the Tutu Wells contamination," (*See* Cigna Br. at 18) the insurer's brief fails to provide any evidentiary proof that Texaco conceded liability for the Tutu contamination. Moreover, a provision in the Four Star agreement expressly preserves Texaco's indemnity and contribution rights against third parties, claims which are premised, at least in some part, *upon defendant's lack of liability.* Thus, it does not appear that Cigna has satisfied its burden with respect to alleged profit losses.

Cigna, however, has satisfied its burden by providing sufficient evidence from which a jury could reasonably infer that a false representation of a material fact was made concerning its agreement not to pursue or assist any environmental claims. Cigna's brief cites to various communications between Texaco's in-house counsel Ricks Frazier and Vernon Morgan's attorney John Zebedee which discussed in detail a potential assignment of rights. (*See* Cigna Br. at 6-9 & accompanying exhibits). The correspondence occurred in 1991, roughly three years prior to the Four Star Agreement. While there is no formally executed document con-

287

firming an official agreement, a reasonable inference from the correspondence is that an informal agreement was reached. Given Frazier's position as in-house legal counsel to Texaco and his awareness of a potential assignment of Vernon Morgan's claims, a trier of fact could reasonably conclude that Texaco failed to honor the Four Star agreement and that the failure to perform was based on a motive that went beyond mere nonperformance.

■ Texaco, however, contends that Cigna's failure to provide direct evidence establishing that Texaco's Four Star representatives were aware of the assignment to Morgan necessarily defeats its crossclaim for fraud. This Court disagrees. Caselaw has clearly established that, due to the difficulties inherent in proving a parties' state of mind, issues of scienter and fraudulent intent are generally questions for the trier of fact. *See, e.g., Glatfelter Co. v. Voith, Inc.*, 784 F.2d 770, 774 (7th Cir. 1986) (noting that "resolution by summary judgment of the issues raised by an allegation of fraud is often difficult or impossible"); *Provenz v. Miller*, 102 F.3d 1478, 1479 (9th Cir. 1996) ("generally, scienter should not be resolved by summary judgment").

Acknowledging these difficulties, some courts look to circumstantial evidence to infer knowledge or intent. In *Crowe v. Henry*, 115 F.3d 294 (5th Cir. 1997), the Fifth Circuit explained that "[f]raudulent intent may be found from circumstantial evidence that one party arranged matters with another party in such a way as would facilitate the commission of a fraud, especially where the evidence further shows that the first party gained money or advantage at the expense of the second." *Id.* at 297.

■ The setting described by the *Crowe* court seems applicable to the instant matter, where Cigna has submitted competent evidence inferring that Texaco procured an assignment prior to commencement of the Four Star negotiations yet waited till after the agreement was finalized to act upon it. Further, the assignment clearly provides an avenue of potential windfall for Texaco at the expense of Cigna. While Cigna's submissions do not include any direct evidence concerning the knowledge and intent of the Four Star negotiators, as discussed above, it need not do so. Based on the circumstantial evidence submitted, i.e. Frazier's position at

288

Texaco and his documented communications with Zebedee concerning the assignment, a trier of fact could reasonably conclude that Texaco's representatives at the Four Star negotiations were aware of the alleged assignment of Vernon Morgan's claims and its potential applicability to the agreement, yet refused to disclose it. Thus a question of fact exists regarding alleged misrepresentations made by the plaintiff.[4]

*Reliance*

Texaco argues that Cigna has not satisfied the second element of the tort because the defendant failed to submit evidence that the plaintiff intended reliance upon the alleged misrepresentation. The Court, however, finds that the circumstances and context within which the alleged misrepresentation were made supports a reasonable inference to the contrary.

Here, the alleged misstatement goes to the very heart of the agreement, which contemplated a "global" settlement of all "Environmental Damage Claims" between the parties. Thus, the purpose of the agreement was to put an end to all litigation between the parties. Clearly Texaco intended Cigna to rely on its "warranty" that it would forego any claims against it. Presumably had Texaco either disclosed its alleged intention to bring the instant action, or refused to consent to the "warranty" portion of the agreement, the negotiations could have been terminated. Thus, the circumstances within which the alleged misrepresentation was made supports a reasonable inference that Texaco intended reliance.

Texaco also contends that Cigna's counterclaim must fail because the defendant can not prove it relied on the statement. In support of its lack of reliance assertion, Texaco cites the deposition testimony of Mark Wood, one of Cigna's chief negotiators in the Four Star Agreement. (*See* Texaco Ex. D, Dep. of Wood). In the deposition, Wood states that the Tutu Wells contamination site was

---

[4]The Court notes that in their briefs, the parties appear to dispute whether Cigna must specifically prove that Texaco's Four Star negotiators (rather than general employees of Texaco) had knowledge of the purported assignment and its potential effect on the Four Star agreement. Since the court concludes that the facts support a reasonable inference that Texaco's negotiators were aware of the agreement, the Court need not and does not address this issue.

289

not a critical area of focus with respect to the settlement negotiations. (*See* Ex. D at 58) While this assertion appears compelling on its face, it ignores the nature of the alleged misrepresentation. The alleged misrepresentation did not concern a Tutu specific statement, but rather a statement that Texaco would not pursue or assist any environmental claims against Cigna. Thus the issue is whether the subject of the non-disclosure, i.e. Texaco's alleged intention to pursue a suit against Cigna via an assignment of third party rights, would have altered the complexion of the settlement agreement.

■ Woods testimony on this matter undisputedly establishes that the purpose of the agreement was to resolve all Texaco claims related to the sites involved in the negotiation. (*See* Dep. of W. Mark Wood, Ex. 4 to Cigna Four Star Brief, at 67-68). Further Woods testified that had Texaco insisted upon a retention of rights against Cigna via third party assignment, the insurer would not have settled for the dollar figure agreed upon. (*See* Dep. of Wood at 133-34). Thus, a reasonable juror could conclude that Cigna in fact relied upon Texaco's representation that it would not pursue any future related claims against the defendant when it made the agreement. Accordingly, considering the evidence submitted by Texaco within the context of the difficult evidentiary issues involved (i.e., questions of knowledge and intent) the Court concludes that material questions of fact exist as to each of the contested elements. Therefore, Texaco's motion for summary judgment as to Cigna's crossclaim for legal fraud is denied.

### Negligent Misrepresentation

Additionally Texaco seeks summary judgment on Cigna's crossclaim of negligent misrepresentation. This Court has observed that the tort of negligent misrepresentation requires proof of the same elements as legal fraud with one additional requirement: a showing that Texaco failed to exercise reasonable care in communicating the information. *See In re Tutu Wells*, 32 F. Supp. 2d at 807.

Texaco argues that no evidence exists to support this additional element since "[t]he information regarding Vernon Morgan's claims was available to Cigna equally, and Cigna is not entitled to rely upon Texaco to supply the information in this arm's length

transaction." (Texaco Br. at 10). This assertion, however, ignores the fact that the information at issue, Texaco's purported intention to bring a claim against Cigna pursuant to its alleged "under the table" assignment of Vernon Morgan's claim in 1991, was not the type of information that was readily available to the defendants. Thus, Texaco' argument is misplaced.

■ Further, the material nature of the information involved and its potential effect on the settlement negotiations supports a reasonable inference that Texaco should have notified Cigna about any alleged intentions it had with respect to pursuing a claim against Cigna via an assignment from Morgan. Assuming the trier of fact were to find for Cigna with respect to the other required elements of the claim, Texaco's failure to disclose such information would arguably constitute a failure to exercise reasonable care. Accordingly, this issue also presents a question for the trier of fact, and therefore Texaco's motion to dismiss Cigna's negligent misrepresentation claim is denied.

### 3) CIGNA'S SUMMARY JUDGMENT MOTION REGARDING THE POLLUTION EXCLUSION

In its motion, Cigna argues that the undisputed material facts warrant a grant of summary judgment in its favor with respect to the pollution exclusion clause of policy SMP 4926. In a prior opinion, the Court rejected a similar Cigna motion, which argued that the term "sudden and accidental" unambiguously means "abrupt and unexpected" and therefore Cigna was entitled to summary judgment based on the undisputed facts. *See Tutu Water Wells Contamination Litigation,* 40 V.I. 265, 32 F. Supp. 2d 808, 813-14 (D.V.I. 1998). Because material fact questions existed, the defendant's motion was denied. *See* 32 F. Supp. 2d at 814. The Court refused to rule on the definition of "sudden and accidental," concluding that "a reasonable juror could find that the leaks were 'abrupt' in nature. If found to be abrupt, the ambiguity of the term 'sudden and accidental' would be irrelevant to the case." *Id.* at 814.

Cigna now revisits this issue, urging that the evidence produced during discovery conclusively establishes that the leaks alleged are gradual. (*See* Cigna Br. at 5). Cigna's brief renews its request that the Court accord the 'sudden and accidental' language of the

291

policy the unambiguous interpretation ("abrupt and unexpected") and dismiss the claim based on the undisputed facts. (*See* Cigna Br at 20-23). Because the Court finds that questions of material fact exist, Cigna's motion is denied.

## Meaning of "Sudden and Accidental"

### A. *The Caselaw*

■ Neither the courts of the Virgin Islands, nor the Restatements of Law have discussed the pollution exclusion with regard to the "sudden and accidental" provision. In instances where there is no Virgin Island law on a topic, courts must first turn to the Restatements of Law, as adopted by the American Law Institute. Where the Restatements do not provide guidance, then the common law as generally understood in the United States applies. 1 V.I.C. § 4.

Courts throughout the United States are split as to the meaning of the term "sudden" within the context of "sudden and accidental" pollution exclusions. A number of courts have concluded that the term "sudden" unambiguously includes a temporal element, and thus found that the exclusion applies solely to pollution that occurs in an "abrupt and unintended" manner. *See, e.g., Sharon Steel v. Aetna Cas. & Sur. Co.,* 931 P.2d 127, 134-36 (Utah 1997). Other courts have held that the term "sudden" is ambiguous, and have applied the exclusion to discharges that were "unexpected and unintended." *See, e.g., Just v. Land Reclamation Ltd.,* 155 Wis. 2d 737, 456 N.W.2d 570 (1990).

The Third Circuit noted this division in *New Castle County v. Hartford Accident and Indem. Co.,* 933 F.2d 1162, 1195 (3d Cir. 1990), explaining that "the authority appears to be evenly divided between the parties' competing constructions of the pollution exclusion clause." While the *New Castle* decision was rendered in 1990, an examination of the current status of the caselaw reinforces its observation. *See Mesa Oil, Inc. v. Insurance Co. of North America,* 123 F.3d 1333, 1338-39 (10th Cir. 1997) (noting the division amongst courts as to the interpretation of "sudden and accidental").

Cigna contends that the temporal aspect of the term "sudden" distinguishes it from the term "accidental." Thus, Cigna argues that stripping "sudden" of its temporal component by construing

it to mean "unexpected" would violate laws of contract interpretation by rendering the term mere surplusage. (Cigna Br. at 26-27). Emphasizing that "[c]ourts in the states which comprise the Third Circuit have all found that the language of the pollution exclusion and the 'sudden and accidental' exception to the exclusion is unambiguous,"[5] the insurers urge that the Court adopt this definition. (Cigna Br. at 21.).

Conversely, Texaco argues that "sudden and accidental" is ambiguous, and therefore V.I. law dictates that the terms must be construed in the light most favorable to the insured. (*See* Texaco Br. at 14). Citing *Cowpet Bay Village-Stage II v. Commercial Union Assurance Co., Ltd*, 1994 WL 714501 (D.V.I. 1994), Texaco argues that should the language be found ambiguous, V.I. law mandates that coverage for the insured is held to exist *as a matter of law*. (*See* Texaco Br. 14). However, the broad proposition that Texaco attempts to assert (i.e. that if there is an ambiguity, the insured is automatically deemed covered) is not supported by the *Cowpet* decision, which held that if the insured proffers a reasonable interpretation of an ambiguous term, then that term controls and the insured is entitled to judgment as a matter of law *so long as the undisputed facts fall within the purview of the meaning offered by the insured. See id.* at *3.[6] Therefore should the Court adopt the

---

[5] While Cigna's assertion is correct on its face, an examination of the New Jersey caselaw reveals that the matter is not so cut and dry. In *Morton Int'l, Inc. v. General Accident Ins. Co. of America*, 134 N.J. 1, 629 A.2d 831 (N.J. 1993), the New Jersey Supreme Court concluded that 'sudden' possesses a temporal element which applies to the circumstances upon which the event occurs, but not necessarily the duration of the leaks. *See* 629 A.2d at 847. Nevertheless, the court refused to enforce the standard pollution exclusion clauses as written, finding that state regulators had been misled by the insurance industry when approval for the provision was sought. *See id.* at 847-48. Thus while the New Jersey Supreme Court's technical interpretation of the clause concluded that it was unambiguous, its application was more consistent with the broader, ambiguous interpretation advocated by the plaintiffs. Further, it is important to note that while the defendant asserts that Pennsylvania caselaw has interpreted "sudden and accidental" unambiguously, the Pennsylvania Supreme Court has remained silent on the matter.

[6] *Cowpet* required a court to resolve a potential ambiguity as to whether a "solid rock infill" was covered under the policy as a 'building' or "retaining wall." *See* Cowpet, 1994 WL 714501, at *3. Unlike in the instant action, the parties did not dispute the type or manner of structure that was being offered for coverage. *See id.* Thus, once the court ruled on the ambiguity, it was free to decide the issue of coverage as a matter of law. Here, the parties dispute the type and duration of the leaks involved, thus precluding the Court

ambiguous interpretation proffered by Texaco, the plaintiff would still be required to prove that coverage existed under the policy.

In support of its "ambiguous" assertion, Texaco argues that the Court should adopt the reasoning of the Third Circuit's *New Castle* opinion. In *New Castle*, the Third Circuit attempted to predict, without any Delaware caselaw on point, how the Delaware Supreme Court would construe the "sudden and accidental" language. The Court examined the rationale for the various interpretations and concluded that:

> When first confronted with this issue, the reader's initial reaction is likely to be that "sudden" means "abrupt." Upon considering the foregoing factors, however, we now are convinced that the County's alternative interpretation of "sudden" (as meaning "unexpected") "reflects a reasonable reading of the contractual language." . . . Because the term "sudden" appears capable of two reasonable interpretations ("abrupt" and "unexpected"), we conclude that the term is unambiguous under Delaware Law.

*See New Castle*, 933 F.2d at 1198 (quoting *Kenner* 570 A.2d 1172 at 1174). The Third Circuit rejected the assertion that interpreting "sudden" to mean "abrupt" would render the term surplusage, explaining that "[w]e believe that the word 'sudden,' even if defined to mean 'unexpected,' is not completely synonymous with the word 'accidental'. . . . Insurance policies routinely use words that, while not strictly redundant, are somewhat synonymous." *Id.* at 1194.

The *New Castle* court cited several factors which contributed to its conclusion that the terms "sudden and accidental" were subject to more than one interpretation: 1) the dictionaries reviewed by the court defined sudden "both with and without a temporal element"; 2) the court concluded that the "profound judicial disagreement over the meaning of the phrase . . . [represented] additional proof that the phrase admits of two reasonable constructions;" and

---

from ruling as a matter of law after it interprets the disputed language's meaning. Therefore, the position asserted by Texaco appears overly broad when contrasted with the facts of this case.

3) the Third Circuit found that insurers attached the meaning of "unexpected and unintended" to previously issued boiler and machinery policies with the exact same language. *See id.* at 1198.

After reviewing the caselaw and the relevant policy considerations, this Court concludes that the Third Circuit's *New Castle* opinion represents the sounder view and thus determines that the term "sudden" is ambiguous in nature. This result is consistent with the Court's prior opinion on the matter.[7] While the Delaware Court did not ultimately adopt the position advocated in *New Castle*, this Court finds the Third Circuit's reasoning persuasive.

■ Virgin Island law dictates that when a court determines that language is ambiguous, the "interpretation more favorable to coverage must prevail." *Coakley Bay Condominium Assoc. v. Continental Ins. Co.*, 26 V.I. 348, 770 F. Supp. 1046, 1051 (D.V.I. 1991). Accordingly the Court holds that the term "sudden and accidental" shall be interpreted in concert with the caselaw defining its meaning as "unexpected and unintended."

### Disputed Questions of Fact

A review of the parties' submissions supports the Court's prior determination that a question of fact exists. Cigna's brief argues that the leaks at Morgan's service station were the result of a corrosive process which "by definition, occurs over a long period of time . . . Gasoline slowly drips out of this pinhole. Initially, the leak is less than a thimble full per day. The size of the hole increases . . . and the release gradually increases from oozing drops to a small stream[.]" (Cigna Br. at 7-8). In support of its assertion Cigna cites to the affidavit of its expert Frank E. Rizzo, whose findings corroborate Cigna's contention. (*See* Aff. of Frank E. Rizzo at ¶ 11, Ex. 3 to Cigna Br). Based on these findings, Cigna concludes that "[t]he undisputed facts show that the releases were non-sudden[.]"

---

[7] Prior to the New Jersey Supreme Court's *Morton* decision, this Court addressed the issue in *Chemical Leaman Tank Lines, Inc. v. Aetna Casualty, and Surety Co.*, 817 F. Supp. 1136, 1155 (D.N.J. 1993). Addressing the issue within the context of New Jersey law, which was unsettled at the time, the Court concluded that "because the meaning of the term 'sudden' may or may not include[] a temporal element," the meaning was ambiguous under New Jersey Law.

(Cigna Br. at 28). However, after examining the record, the Court disagrees.

Texaco's submissions include the deposition testimony of Texaco expert John F. Love, in which Love asserts that because the tank system used at Morgan's Texaco station was a "suction system," leaks of any size would be "readily identifiable" and a repair of line leaks would not require that the entire system be replaced. *See* Texaco Ex. 6 at 74-75. Further, the record contains letters submitted by Vernon Morgan to Texaco which detail Morgan's discovery and report of each line leak, as well as the steps taken to remediate the matter. (*See* Texaco Ex. 11). Morgan's letters reveal that the leaks were discovered pursuant to his routine practice of recording the gas level at the beginning and end of each day. The letters document that when a discrepancy was found, Morgan immediately notified Texaco, who promptly responded. (*See id.*). Thus, viewing the evidence in the light most favorable to the non-moving party, a reasonable juror could conclude that the line leaks were the result of unexpected and unintended occurrences.

In addition to the line leaks, Cigna contends that there were several leaks in the underground storage tanks which contributed to the contamination of the aquifer. However, Cigna's tank leak argument is primarily based upon Vernon Morgan's inventory reconciliation records, documents that a Texaco auditor has testified are unreliable. (*See* Dep. of Hector Correa, Texaco Appendix at Ex. 8). Additionally, Morgan's practice of measuring the tank volume on a routine basis further contradicts the defendant's assertion. Thus the deposition of Texaco's auditor, coupled with Morgan's custom of measuring the tank levels each day, sufficiently undercuts Cigna's underground storage tank theory and creates a question of fact for the jury.

Alternatively, the defendant argues that the leaks developed during the "ongoing course of business," and therefore the court should not engage in the micro-analysis of each leak, but rather should find as a matter of law the contamination was the result of a gradual, recurring process, (*See* Cigna Br. at 15). Cigna cites several cases in support of its contention. However, the court decisions in the cases cited were based on facts markedly different than those of the instant action. The cases cited involved contam-

ination that either: 1) occurred so frequently that spills were nearly a weekly occurrence;[8] or 2) were the direct result of a routine practice designed to dispose of the contaminants.[9] Thus, it appears that Cigna's "ordinary course of business" argument is not supported by the facts of this case and should be rejected.

■ Accordingly, the Court holds that the phrase "sudden and accidental" is ambiguous and shall be construed in accordance with the terms "unexpected and unintended." Further, the Court concludes that since material questions of fact exist as to whether the alleged pollution occurred in an unexpected and unintended manner, Cigna's motion for summary judgment is denied.

### III. CONCLUSION

For the above stated reasons, CIGNA and Texaco's motions for summary judgment are denied.

THIS MATTER having come before this Court on TEXACO, INC. and TEXACO CARIBBEAN, INC., ("Texaco") Successor to Vernon Morgan's Motion for Partial Summary Judgment On Cigna And Fireman's Fund's Counterclaims for Legal Fraud and Negligent Misrepresentation; and on the motion of Fireman's Fund Insurance Company, CIGNA Corporation, AFIA (improperly designated as AFIA Worldwide Insurance), CIGNA International Corporation and Insurance Company of North America; ("CIGNA")[10] for Summary Judgment regarding the Pollution Exclusion clause;

---

[8] See Guaranty Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 195 (5th Cir. 1998) (finding that there were over 100 separate spills of perc at defendant's sites); Quaker State Minit-Lube v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1524-25 (10th Cir. 1995) (noting that workers' testimony revealed that there were frequent accident spills, one worker did not recall a single year where there was not a spill, and that at some point acid sludge was dumped directly on the ground in an unlined, earthen pit).

[9] See Cincinnati Ins. Co. v. Flanders Electric Motor Serv., 40 F.3d 146, 154 (7th Cir. 1994) (explaining that the releases of PCB were commonplace events which resulted from twenty years of improper waste handling and storage practices); American States Insurance Co. v. Sacramento Plating, Inc., 861 F. Supp. 964, 966 (E.D. Cal. 1994) (noting that undisputed evidence existed that for twenty five years toxic chemicals were regularly spilled onto the floor during plaintiff's cleaning of automobile parts).

[10] The Court notes that recently, at oral argument held on November 18th, 1999, the parties stipulated on the record that the named defendants AFIA, CIGNA Corporation, CIGNA International Corporation and Insurance Company of North America were dismissed

The Court having reviewed the record and the submissions of the parties; and

Having heard argument on these matters on November 18th, 1999; and

For the reasons stated in the Court's opinion of this date;

IT IS this 24th day of November, 1999 HEREBY

ORDERED that TEXACO's Motion for Partial Summary Judgment is DENIED; and it is FURTHER ORDERED THAT CIGNA's Motion for Summary Judgment is DENIED.

No costs.

---

with prejudice from the case while Fireman's Fund Insurance Company ("Fireman's Fund") remained as a defendant. The parties further agreed that any action by Cigna entities would be attributable to defendant Fireman's Fund. Because this stipulation occurred subsequent to the filing of the instant motion, and since the parties agreed that any actions by Cigna entities will be attributable to Fireman's Fund, for purposes of administrative convenience "Cigna," signifies the actions of Third-Party Defendants CIGNA Corporation, Fireman's Fund Insurance Company, ("Firemen's Fund"), AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America.